Filed 4/8/22  Colapinto v. Stoll CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| GERALD COLAPINTO,<br><br>        Plaintiff, Cross-defendant and Respondent,<br><br>v.<br><br>PETER STOLL,<br><br>        Defendant, Cross-complainant and Appellant;<br><br>ADELE DE RUITER STOLL,<br><br>        Defendant and Appellant. | E075364<br><br>(Super.Ct.No. RIC1706856)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  L. Jackson Lucky IV, Judge.  Affirmed.

Peter R. Stoll in pro. per., for Defendant, Cross-complainant and Appellant.

Adele Stoll in pro. per., for Defendant and Appellant.

1

Law Offices of Lawrence R. Bynum, Lawrence R. Bynum for Plaintiff, Cross-defendant and Respondent.

Peter and Adele Stoll separately appeal a judgment in favor of Gerald Colapinto, plaintiff, for cancelation of an instrument and breach of contract. Boiled down to its essence, plaintiff arranged for the assignment of his promissory note and deed of trust held by his former attorney to defendant Peter Stoll (Peter)[1], a disbarred attorney who had advised plaintiff on legal and tax matters for many years. After re-assigning the benefits of the note and deed of trust to himself and his wife, Adele, Peter executed a full reconveyance of the deed of trust to plaintiff, which was not promptly recorded. Later, when defendant demanded from plaintiff, and was denied, funding for a business venture he claimed plaintiff had promised earlier, Peter and Adele commenced foreclosure proceedings against plaintiff. Following a court trial, judgment was rendered in favor of plaintiff and each defendant appeals separately.

On appeal, both defendants raise multifarious challenges to the trial court's findings of fact and conclusions of law, some of which overlap. Peter argues: (1) plaintiff abandoned all of his causes of action; (2) illegality is a complete defense, and (3) plaintiff's pleadings admit the conveyance was fraudulent; (4) plaintiff's attorney's fees are not recoverable; (5) the trial court erred in holding Peter's affirmative defenses failed; (6) the court erred in holding that Adele was bound by Peter's reconveyance; (7) the court erred in finding the eventual recording of the reconveyance extinguished the

---

[1] Because their surnames are the same, we refer to the defendants by first names for clarity.

2

underlying lien; (8) plaintiff lacked standing to pursue the complaint; (9) the court erred in ruling on defendant's in limine motion, number 11; (10) plaintiff's failure to verify the amendment to his complaint affects his right to recover; (11) a challenge to the court's finding that Peter's hands were dirtier than plaintiff's; and (12) another challenge to the court's finding that no party in this case can wear a white hat with credibility.

Adele's brief also challenges certain factual findings and legal conclusions: (1) the judgment on the cancelation of instrument claim is based on erroneous findings and conclusions; (2) the findings of law are factually erroneous; (3) whether there was actual and constructive notice; (4) the legal effect of Adele's letter to plaintiff; (5) the legal conclusion that Peter's reconveyance was binding on Adele; (6) whether exhibit 28 showed Adele knew of Peter's plan to reconvey the property and agreed to it; (7) the trial court failed to address the merits of Adele's defenses.  We affirm.

## BACKGROUND

Having reviewed the record and the briefs, we share the trial court's lack of confidence in the relative credibility of any of the parties to this action.  Therefore, we rely only on testimony of the parties which is undisputed and which identifies or contextualizes the documentary evidence.

Plaintiff and Peter Stoll were friends for over thirty years.  Plaintiff was an entrepreneur who held licenses to sell Vatican themed gift items through various business entities.  Peter was an attorney whose practice centered on tax matters, bankruptcy and commercial litigation, but who was disbarred.  Following his disbarment, he continued to

3

advise plaintiff and plaintiff's attorneys. Specifically, in the late 1980s or early 1990s, Peter advised plaintiff regarding a lien imposed by the California Employment Development Department (EDD) on plaintiff's property.

Also in the 1980s, plaintiff sought to take his business, Design Giftware, International (DGI), public, and partnered with a businessman, Scott Sherman, who had the means to accomplish the goal. Plaintiff and Sherman entered into an arrangement whereby plaintiff acquired stock in Sherman's public entities and Sherman acquired interest in DGI. However, due to fluctuations in the stock market, Sherman's holding company and primary stock underwriter became the target of regulatory action by the Securities and Exchange Commission, causing its stock to lose value.

In the meantime, plaintiffs concealed the poor financial condition of DGI and did not inform Sherman that it was delinquent in the payment of state and federal taxes or that it was behind in its payment of royalties to artists and commissions to salesmen, among other defaults. Sherman moved from Florida to California to try to assist in the operations of DGI and to salvage the business but could not. By this time, the merger was complete, plaintiff having transferred all his shares in DGI to one of Integrated Business Corporation's subsidiaries, and plaintiff became president of the new entity. However, according to plaintiff, Sherman pushed plaintiff out of DGI, leading to litigation, in which plaintiff was represented by attorney Herb Schulze.

Because plaintiff did not have funding for the costs of the litigation, Schulze agreed to accept a contingent fee based on any recovery and fronted the costs of the

litigation.  Plaintiff executed a promissory note in the amount of $380,000, secured by a deed of trust, with a notation that the amount was contingent upon recovery for present matters.  The deed of trust, a lien against plaintiff's residence, was executed on December 7, 1990.  By its terms, the note was payable on December 7, 1995, or "upon receiving funds from present cases."  An asterisk footnote added, "Contingencies at 1/2 of proceeds of present cases."  On December 11, 1990, Schulze recorded the short form deed of trust, with which plaintiff and his wife secured the note with their residence.[2]

That litigation was unsuccessful.[3]  By this time, plaintiff had worked with Peter, who advised plaintiff on, among other matters, the obtaining of a Vatican license to sell

---

[2]  Pursuant to California Rules of Court, rule 8.224, some of the relevant exhibits (Exhibit) have been transmitted to this Court for our consideration.  (Exh. nos. 15, 17, 19, 20, 27, 28, 30, 31, 35, 36, 39, 42, 45, 46.)  Other Exhibits were incorporated into the clerk's transcript on appeal (Exh. nos. 5, 6, 9, 10, 11, 12, 24, 29), additional Exhibits were incorporated into the parties stipulated augment (Exh. nos. 28, 30, 31, 33, 36, 39, 46), and even more Exhibits were included in defendants' augment request.  The Exhibits included in the stipulated augment and defendant's augment do not bear Exhibit marks.

[3]  The Riverside Superior Court judgment was appealed, and we affirmed in the case of E015833, *Colapinto et al., v. Integrated Financial Group, et al.*, (Sept. 30, 1996) [nonpub. opn.].  In that case, plaintiffs (Gerald and Eileen Colapinto) alleged defendant committed fraud in misrepresenting facts material to the parties' agreement.  Defendants answered and cross-complained alleging the bar of the statute of limitations, and that plaintiffs had misrepresented the financial soundness of DGI.  Because the financial fallout from that transaction, in particular, the state taxes owed, formed the basis for the current situation, we quote our summary from page five of our unpublished opinion in that case:  "Sometime late in 1989, Sherman became aware that DGI was experiencing financial difficulties.  In 1990 Sherman moved from Florida to California to assist in the operations of DGI.  Thereupon, he discovered DGI was delinquent in payments of taxes to the State of California and to the Internal Revenue Service (IRS).  Sherman attempted to institute cost control measures; however, he was unable to salvage DGI.  In November of 1990 the IRS physically seized the DGI facility and shut down the company as a result of unpaid taxes.  The IRS seizure of DGI effectively constituted its death knell."

*[footnote continued on next page]*

5

light religious items as well as on the $250,000 lien imposed by the EDD, on a patent, and to set aside the trust deed. Plaintiff asked Peter to have the note and deed of trust assigned to himself.

On September 20, 1999, at plaintiff's urging, and four years after the date by which payment on the promissory note was due, Schulze assigned the note and deed of trust to Peter. The trial court referred to this as "Assignment 1," and it bears only Schulze's signature. Also on that same date, Peter transferred the assignment of the deed of trust and note to himself and his wife, Adele, husband and wife, in joint tenancy, with right of survivorship; this instrument was not recorded. That same date, Schulze executed a short form assignment of deed of trust to Peter and Adele, who each signed the assignment, which was recorded on April 25, 2002, although executed in September 1999. The recorded deed of trust does not mention that Peter and Adele held their interests in joint tenancy.

On April 12, 2002, Peter (without Adele) executed a substitution of trustee and full reconveyance, which was notarized but not recorded. Peter delivered this instrument to plaintiff, informing plaintiff that he was reconveying the Schulze deed of trust to plaintiff, pursuant to plaintiff's request, and that the note and deed of trust had been taken care of.

---

Apparently the story has evolved over time, so that by the time the instant case was filed, Sherman was the bad guy who forced plaintiff out of his thriving business and pressured witnesses.

6

On April 25, 2002, the assignment of deed of trust from Herb Schulze and Peter and Adele, which had been executed on September 20, 1999, was recorded.

Second Renaissance, LLC, one of plaintiff's companies involved in the Vatican product licensing, held a master license from the Vatican Library and another from the Vatican Treasury. Second Renaissance entered into an agreement with the Vatican to terminate both licenses, for which plaintiff and another licensee were to split a gross amount of $5 million. However, the Vatican withheld a substantial part of the settlement pending resolution of fraud allegations against Second Renaissance in the selling of a sublicense to another firm.

In 2006, plaintiff had two cases pending in New York, in the Brooklyn and Manhattan federal district courts arising out this dispute. Plaintiff asked Peter to represent him, but Peter did not act as attorney of record. Peter assisted plaintiff by working with the two counsel who were handling litigation involving Second Renaissance, LLC, for which plaintiff paid Peter approximately $84,000. This litigation, which went to trial in 2005 or 2006 in New York City, New York, was resolved in plaintiff's favor. The turning point in plaintiff's favor was a motion for a directed verdict, ghost-written by Peter, and dictated to Adele over the telephone.

On April 26, 2007, Peter sent an email to plaintiff asking plaintiff to wire $9,000 to Legal World Marketing, which plaintiff paid on April 27, 2007.

On October 7, 2009, Peter emailed plaintiff a lengthy analysis criticizing legal advice given by another individual and analyzing the "Pro's [*sic*] and Con's [*sic*] of

7

Consolidating State Court Action into Arbitration." On November 8, 2011, Peter sent plaintiff an email analyzing the Government Code sections on tax liens and offered to call the EDD anonymously. In November 2011 and December 2012, Peter sent emails giving legal advice to plaintiff regarding an apparent contract dispute. Up until June 2013, plaintiff and Peter exchanged emails regarding tax liens. In addition, plaintiff's attorneys regularly called Peter to discuss litigation.

On August 29, 2014, Peter emailed plaintiff accusing plaintiff of hiding money from him and reminding plaintiff of a settlement Peter had obtained on plaintiff's behalf. Peter informed plaintiff he would be adding $34,000, a previously unbilled amount, to his billing.

Several days later, on September 5, 2014, Adele followed up on Peter's email, indicating that she also believed plaintiff was hiding money. She also indicated she knew what had been going on because Peter had shared that information with her over a span of time. She informed plaintiff he previously owed Peter a reduced fee of $84,334, but that $118,334 was now due. She demanded that plaintiff wire $118,334 by September 9, 2014, or she and Peter would commence foreclosure on the Schulze trust deed, and that EDD would be monitoring the sale. Further, she admitted knowing about the reconveyance Peter had sent to plaintiff, without her signature, and promised that plaintiff would receive a full reconveyance if plaintiff "keeps his word," by paying Peter $118,334. On September 15, 2014, Peter received $84,344 from plaintiff for the work done on the New York litigation.

On August 3, 2015, Peter executed another substitution of trustee and full reconveyance, which was notarized and which named Sandra Nutt as trustee. He also executed a request for full reconveyance as beneficiary, stating that "Said note and all other sums and indebtedness secured by said Deed of Trust have been fully paid and satisfied, and said Deed of Trust and note are herewith surrendered . . . ." He told plaintiff to stop bugging him. Neither document was recorded and neither included Adele's signature.

Also on August 3, 2015, Peter executed a full reconveyance, which was notarized but not recorded. Peter informed plaintiff's daughter Sandra Nutt, that plaintiff wanted to put the house under her name. The instrument reflects that Peter, as beneficiary, was substituting Nutt as trustee in place of Herb Schulze. Peter's signature was notarized on the same date. On August 4, 2015, Peter executed a request for full reconveyance, again indicating that all sums due under the note had been paid and that the note and deed of trust were surrendered for cancellation.

In February 2016, Peter asked to borrow $20,000 from plaintiff.[4] Plaintiff informed Peter by email that he had had to borrow the money at six percent interest, payable in 90 days, and that he could not get any extensions. Plaintiff asked Peter to reply with his approval of the payback by June 1, 2016. By direct reply, Peter emailed plaintiff responding "Yes, the agreement is OK." Plaintiff lent Peter the $20,000, but

---

[4] In his testimony, Peter waffled about the nature of the transaction. After initially testifying that he asked to borrow the $20,000, he later denied it was a loan, stating plaintiff had promised to fund Law Pro.

Peter never repaid the loan, and denied that he agreed to the six percent interest, despite the acceptance in his email.

On June 12, 2016, Peter emailed plaintiff disputing that the repayment of the loan was due on June 1, 2016, complaining that plaintiff "shorted" him $16,000 of the original amount of $36,000, and complained that plaintiff had hidden money from Peter. In a prior email to plaintiff dated May 19, 2016, Peter had, for the first time, referred to some agreement by plaintiff to "fund"[5] Peter's business enterprise, Law Pro, suggesting plaintiff had agreed to invest in it, along with his daughter.[6] Adele also testified that Peter told her plaintiff agreed to "fund" Law Pro, and she did a lot of the work on the program. However, no agreement was made in writing and, other than Peter's emails complaining that plaintiff had not "funded" Law Pro, there is nothing in writing confirming the existence or terms of an agreement.

On July 16, 2016, Peter and Adele recorded a substitution of trustee and a notice of default and election to sell under the 1999 deed of trust. Peter and Adele initiated the

---

[5] We put the word "fund" in quotations because Peter would not concede that the $20,000 was a loan, despite his express acceptance of plaintiff's offer by way of email. By parsing the term "fund," he apparently wanted to convey that plaintiff was investing in Peter's business venture. However, without a written agreement, the inference that plaintiff never intended the $20,000 transfer to be a loan that was repayable is not credible, and was contradicted by the email that Peter acknowledged sending, accepting the terms of the loan.

[6] The exhibits are difficult to follow because Peter's reply of June 12, 2016 is combined with plaintiff's response to the May 19, 2016 email. From the trial court's comments, the part written by Peter in Exhibit 35 was different in appearance from the rest of the text of what otherwise appeared to be an email from plaintiff to Peter.

10

foreclosure based on the note and deed of trust assigned by Schulze to Peter and Adele, despite the prior assignments and reconveyances.

In August 2016, approximately one year since Peter had executed the unrecorded second substitution of trustee and full reconveyance, Peter sent the document to Nutt and instructed her to sign it and have it notarized, and that the document should take care of the lien. On August 18, 2016, the substitution of trustee and full reconveyance, substituting plaintiff's daughter as trustee under the deed of trust, in place of Peter, was executed by plaintiff's daughter, Sandra Nutt, and was recorded on August 22, 2016. This document is identical to the document executed and notarized by Peter on August 3, 2015, except for Sandra Nutt's execution and recordation.

On July 19, 2016, Peter and Adele recorded a substitution of trustee and notice of default and election to sell under deed of trust, executed by both defendants.

On May 11, 2017, plaintiff and his wife, Eileen, filed a first amended complaint alleging causes of action for (a) statutory injunctive relief; (b) slander of title; (c) civil conspiracy; (d) breach of fiduciary duty; (e) quiet title; and (f) fraud in the inducement. On September 25, 2017, defendants Peter and Adele Stoll cross-complained sounding in (a) fraud; (b) negligent misrepresentation; and (c) common counts. Defendants made a motion for summary adjudication of the second and fifth causes of action, which motion was granted as to the second cause of action (slander of title) but denied as to the fifth cause of action (quiet title).

11

In 2018, plaintiff Eileen Colapinto was deemed unable to participate in the litigation due to cognitive impairment. On March 11, 2019, the first amended complaint was dismissed as against both defendants by Eileen Colapinto only. On June 17, 2019, a settlement was reached between plaintiff and defendants whereby the named codefendant Law Pro agreed to entry of judgment in the amount of $20,000 in favor of plaintiff.

At the time of trial, all parties waived jury and the matter proceeded as a court trial. Among other in limine motions, the trial court denied defendants' motion to dismiss the quiet title and statutory injunctive relief causes of action due to the death of the joint owner who dismissed her claims. On October 8, 2019, defendant Adele Stoll made a motion to dismiss the complaint on the ground it was unverified. The trial court denied the motion. On October 29, 2019, Peter re-raised the issue of the unverified complaint. The court again denied that motion. On October 31, 2019, defendant Peter re-raised the issue of whether Eileen's dismissal of her complaint precluded plaintiff from pursuing the lawsuit. The motion was denied in the court's statement of decision.

On October 31, 2019, plaintiff made a motion to amend his complaint to conform to proof by adding causes of action for cancellation of instrument, breach of contract (as to Peter only), and restitution/disgorgement of attorney's fees paid to Peter Stoll, and for recovery of plaintiff's attorney's fees. The trial court permitted the amendment as to causes of action for cancellation of instrument and breach of contract (against Peter only), but denied the motion as to the remaining potential claims for restitution of attorney fees paid.

12

After both sides rested, plaintiff dismissed the cause of action on the civil conspiracy cause of action, electing to proceed on the cancellation of instrument, quiet title, breach of fiduciary duty, and breach of contract theories.

On February 4, 2020, the court issued its ruling on a submitted matter, finding in favor of plaintiff on both the complaint and the cross-complaint, entering orders canceling the deed of trust and awarding plaintiff $20,000. Peter requested a statement of decision. Each defendant proffered objections to the statement of decision and proposed judgment.

On May 7, 2020, Adele filed a notice of intent to move to set aside and vacate the judgment, challenging various findings of fact and conclusions of law. At the hearing on Adele's motion to vacate the judgment, the court denied the motion on two grounds: first, it was untimely; and second, she did not meet her burden of proving that the facts and law do not support the judgment. Peter appealed the judgment on July 8, 2020, while Adele filed her notice of appeal on July 15, 2020.

## DISCUSSION

Both defendants have presented a shotgun approach to their challenges on appeal, but many of their issues do not constitute legal arguments or assignments of errors. We address their claims separately.

I. *Peter's Appeal*: For the most part, Peter quibbles with findings made by the trial court before reaching the merits of the issues before it without demonstrating legal error in the findings. As we will demonstrate, the trial court's findings as they pertain to

13

the relative credibility of the parties whose testimony was presented at trial are completely proper.

### a. *Gerald Did Not Abandon All Causes of Action.*

Peter argues that Gerald abandoned all causes of action. However, Peter's "argument" is unaccompanied by any citations to authority or legal analysis to support his position. It is well settled that appellate briefs must provide argument and legal authority for the positions taken. (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862.) When an appellant asserts a point but fails to support it with reasoned argument and citations to authority, we treat the point as waived or forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) Peter has forfeited any claim of error in this regard.

### b. *Peter's Illegality Defense Was Properly Rejected.*

Peter argues his affirmative defense of illegality was improperly rejected when the trial court concluded that all his affirmative defenses failed. He asserts that a fraudulent transfer to avoid creditors is a misdemeanor, and that, from this, Gerald's allegations in the complaint and responses to discovery admitted Gerald was guilty of fraud in evading creditors. However, Peter has omitted to point to any specific allegations of the first amended complaint in which Gerald admitted committing a fraudulent conveyance. Additionally, his references to pages 520-525 of the clerk's transcript, where Gerald filed his motion to amend the complaint to conform to proof, do not support his assertion that Gerald admitted committing a fraudulent transfer.

14

Peter has failed to demonstrate his affirmative defense of Gerald's illegality excuses his own conduct. A contract is unlawful if it is "1. Contrary to an express provision of law; [¶] 2. Contrary to the policy of express law, though not expressly prohibited; or, [¶] 3. Otherwise contrary to good morals." (Civ. Code, § 1667; see also Civ. Code, §§ 1441 ["A condition in a contract, the fulfillment of which is . . . unlawful . . . is void."], 1608 ["If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void."].)

To establish the affirmative defense of illegality, the burden was on Peter to prove that the consideration for the contract was illegal. (Civ. Code, § 1608.) Here, the consideration for the note was the contingent attorney fee agreement, which is not, in and of itself, illegal. Peter's assertion that the motive for the transaction was to avoid the tax lien does not render the promissory note illegal. The court properly rejected the affirmative defense.

c. *Gerald Made No Judicial Admissions that Would Preclude His Recovery.*

Peter argues the allegation of a fact in a pleading is a judicial admission. He includes some authority in his brief discussion, but never establishes what judicial admission allegedly made by Gerald would infect the judgment. We are well aware of the legal principles governing judicial admissions and the cases cited by Peter. (Ref. *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 187.) However, as the appellant, it was his

15

burden to demonstrate that Gerald made a judicial admission that affected his right of recovery. We find none in our review of the record.

d. *The Trial Court Did Not Award Attorney's Fees.*

Peter argues that plaintiff's attorney's fees are not recoverable. The trial court judgment presently under review does not award attorney's fees. Peter refers to a post-judgment memorandum of costs, but that proceeding is not before us. The proper remedy for a challenge to a memorandum of costs is to file a motion to tax costs. (Code Civ. Proc., §§ 1032, 1034.) This matter is not properly before us.

e. *Legal "Fees" Post Trial Were Not Ordered at Trial*

Peter also argues that the post-judgment award of legal fees was improper. As with the previous argument, this issue is not properly before us insofar as it involves a post-judgment ruling that is not included in the judgment or part of the record on appeal.

f. *Gerald's Conduct of Evading Creditors Was Irrelevant Respecting the Adjudication of Defendant's Own Conduct.*

Peter's next argument is titled, "Gerald's Continuing Evasion of Creditors," but like so many of Peter's assertions, it is not framed as an assignment of error and is unaccompanied by any citation of authority or *legal* analysis to support any relief on appeal. The Court of Appeal is designed to resolve legal errors committed by the court. None has been identified in this issue.

g. *The Trial Court Correctly Rejected Peter's Affirmative Defenses.*

Peter complains that the trial court made a blanket finding in its statement of decision that Peter (and Adele's) affirmative defenses failed. He urges that "The most relevant affirmative defenses are the 4th (Unlawful Conduct), 5th Fraud, (Fraudulent Conveyance), 6th (Plaintiffs' Fraud), 7th (Plaintiffs' Criminal Conduct under the California Penal Code & case law) , 10th (Plaintiffs' Misconduct), 18th (Alleged Damages Caused By Third Parties), 23rd (Estoppel), 24th (Unclean Hands), 25th (Unjust Enrichment) , 27th (Laches) and 29th (Statute(s) of Limitations)", deserved more attention than the single sentence in the court's decision.

However, Peter has failed to supply us with relevant authority or reasoned analysis to demonstrate the manner in which the trial court's collective rejection of the affirmative defenses was erroneous. On appeal, "the trial court's judgment is presumed correct, and the burden is on the appellants to demonstrate reversible error." (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 708 citing *Jameson v. Desta* (2018) 5 Cal.5th 594, 609.) No reversible error has been demonstrated as the record supports the trial court's judgment.

h. *Peter's Reconveyance Binds Adele.*

Peter challenges the trial court's findings respecting the legal effect of Peter's reconveyance of the note and deed of trust. Specifically, he argues that the trial court improperly transmuted the property into community property where the second assignment of the note and deed of trust showed Peter and Adele received the assignment

17

to themselves, husband and wife, as joint tenants. In Adele's opening brief, she also takes issue with the legal effect of Peter's solo execution of the full reconveyance in favor of plaintiff. These arguments fail.

In the first place, for property acquired during marriage on or after January 1, 1975, the general community property presumption applies irrespective of the form of title. (*In re Brace* (2020) 9 Cal.5th 903, 924.) "'[H]olding property in joint tenancy allows the surviving spouse to avoid probate when [his or] her partner dies.'" (*Brace, supra,* 9 Cal.5th at p. 932, citing *Estate of Luke* (1987) 194 Cal.App.3d 1006, 1015.) "[J]oint tenancy titling of property acquired by spouses using community funds on or after January 1, 1985, is not sufficient by itself to transmute community property into separate property." (*Brace*, *supra,* at p. 912.)

Pursuant to Family Code section 1102, each spouse has management and control over the community real property. While the section requires both spouses to join in the executing an instrument by which that community real property or an interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered (Fam. Code, § 1102, subd. (a)), a mortgage, or deed of either spouse, holding the record title to community real property to an encumbrancer, in good faith without knowledge of the marital interest therein is presumed to be valid if executed on or after January 1, 1975. (Fam. Code, § 1102, subd. (c)(2).)

A conveyance (or encumbrance) of an interest in realty by one spouse is treated as valid unless set aside by the non-conveying or encumbering spouse. "The conveyance is

18

not void but is merely voidable, and will be treated as valid until avoided by the wife." (*Jack v. Wong Shee* (1939) 33 Cal.App.2d 402, 415.) In other words, "an improper transfer of community property is not void *ab initio*, but merely voidable at the instance of the aggrieved spouse." (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 673, citing *Ballinger v. Ballinger* (1937) 9 Cal.2d 330, 334; *Trimble v. Trimble* (1933) 219 Cal. 340, 344.)

Here, there was no conveyance or encumbrance of community property; Peter received the first assignment of the note and deed of trust as a beneficiary, not as a debtor. Adele was well aware of Peter's act of receiving an assignment of the note and deed of trust and accepted the reassignment to herself and Peter as beneficiaries. Peter's reassignment of the note to plaintiff, who was unaware of Peter's reassignment to himself and Adele, is presumed valid where Adele admitted she was aware of the reassignment and purposely withheld her signature. Adele took no steps to invalidate Peter's substitution and reconveyance. In this situation, Peter and Adele have been hoisted on their own petard.

        i.        *The Underlying Lien Was Extinguished by Peter's Full Conveyance.*

Peter argues that the recordation of his reassignment of the benefits of the note and deed of trust did not extinguish the lien. Revealing the full scope of his deception, he argues that because the original deed of trust naming himself and Adele as beneficiaries was still a matter of record (because he delayed recording the assignment to Nutt and failed to record his reconveyance to plaintiff), the reassignment was ineffectual. Peter

19

also argues that because plaintiff was not a party to this reassignment, he has no standing or recourse to argue that the lien was extinguished. We disagree.

Assuming Peter had any interest in the note left to reassign (after the unrecorded reconveyance to plaintiff), Peter assigned to Nutt his position as trustee under the deed of trust. He also executed and delivered a full reconveyance of the note, with the notation that the "note and all other sums and indebtedness secured by said Deed of Trust have been fully paid and said Deed of Trust and note are herewith surrendered to you for cancellation . . . " This sounds like Peter transferred all his rights and benefits under the note and deed of trust, for which reason he lacks standing to claim any continuing interest therein. "When the trustee receives the request, the trustee executes and records a deed of reconveyance transferring the security interest to the present owner of the property. Recordation of the deed of reconveyance extinguishes the lien on the property created by the deed of trust." (*Siegel v. American Savings & Loan Assn.* (1989) 210 Cal.App.3d 953, 957; see also, *First Fidelity Thrift & Loan Assn. v. Alliance Bank* (1998) 60 Cal.App.4th 1433, 1441.) In short, even if the prior reconveyance to plaintiff was ineffectual, any lien held by Peter was extinguished by the reassignment to Nutt and he is estopped to claim any remaining interest in the note or the deed of trust.

Moreover, because Adele was aware of the full reconveyance and did not take timely action to set it aside, she is bound by Peter's reconveyance.

20

j.       *Gerald Had Standing to Seek Relief*

Peter argues Gerald lacks standing to seek relief for cancellation because only Peter executed the reconveyance to Nutt, and Nutt had not reconveyed it to plaintiff. Peter seems to have forgotten how this action came about:  Peter and Adele attempted to foreclose on a promissory note and deed of trust to which each of them (either directly or by acquiescence) had surrendered all interest.  In short, plaintiff sought to cancel the instrument under which Peter and Adele sought foreclosure.

Peter cites no legal authority supporting a claim that either he or Adele retained a legal right or interest to foreclose under a note and deed of trust that had previously been fully reconveyed to Nutt.  As we have previously noted, the full reconveyance extinguished any legs Peter or Adele had to stand on vis-à-vis a right to foreclose on plaintiff's property.  Plaintiff was the person whose real property was at the center of the foreclosure so he was a real party in interest with standing to sue.  "A foreclosed-upon borrower clearly meets the general standard for standing to sue by showing an invasion of his or her legally protected interests." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 937, citing *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175.)  Thus, a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure.  (*Yvanova v. New Century Mortgage Corp.*, *supra,* 62 Cal.4th at p. 924.)

k.      *Peter's In Limine Motion Number 11 Was Properly Denied Where Eileen's Dismissal Did Not Dismiss Gerald's Claims.*

Peter argues that plaintiff lacked standing to continue prosecution of the complaint after Eileen, plaintiff's wife, dismissed her complaint. Peter cites no legal authority for this novel proposition and he makes no attempt to argue that Eileen was a necessary or an indispensable party. He has failed to discharge his burden on appeal. We find no error.

l.      *Any Defect in the Verification of the Complaint Has Been Long Forfeited.*

Peter argues that the lack of verification, required pursuant to Code of Civil Procedure section 761.020, on the first amended complaint defeats plaintiff's right to relief. We disagree.

First, the amended complaint on which the trial was held was properly verified by both plaintiff and his wife Eileen. However, in his testimony, plaintiff had no recollection of signing the verification and questioned whether the signature was his. He did not move to strike the verification or the first amended verified complaint, so Peter's claim that plaintiff "abandoned" the quiet title claim of the complaint is a misrepresentation of the record. The first amended complaint, as filed, was verified so it complied with Code of Civil Procedure section 761.020.

Nevertheless, as the trial court pointed out to defendants in trial, the verification requirement is not jurisdictional. "[A] signature defect does not warrant striking of the complaint or dismissal of the action unless the plaintiff fails to timely remedy the defect or the court determines that the plaintiff did not actually assent to the filing of the action."

22

(*Board of Trustees v. Superior Court* (2007) 149 Cal.App.4th 1154, 1170.) However, as the court in *Board of Trustees* held at page 1169, the signature defect is a technical one, and, by proceeding to trial without objecting to the lack of verification, Peter waived any right to object to defendants' pleading error. (*Zavala v. Board of Trustees* (1993) 16 Cal.App.4th 1755, 1761, citing *Hill v. Nerle* (1916) 29 Cal.App. 473, 475; *Ware v. Stafford* (1962) 206 Cal.App.2d 232, 237.)

Here, plaintiff clearly assented to the filing of the action, so whether he recalled signing the verification or recognized the signature is of no moment at this stage.

m.       *Peter's Complaint Regarding the Trial Court's Reference to the Unclean Hands of both Parties Does Not Amount to an Assignment of Error.*

Peter takes umbrage at the trial court's finding that if Gerald had unclean hands, Peter was up to his elbows. The court also stated that Peter's emails show he was complicit in the very efforts to avoid paying taxes to EDD, unlawfully gave legal advice to plaintiff, and that Adele's emails showed she was well aware of their activities. It is a well-worn maxim that "No one can take advantage of his own wrong." (Civ. Code, § 3517.) The fact that plaintiff demonstrated questionable business practices and motives for engaging the services of defendant, a disbarred attorney, do not excuse the fraudulent actions of even a disbarred attorney.

Peter provides no citation of authority or reasoned legal analysis of any purported error in the court's finding, with which we agree, so he has forfeited any challenge.

n. *Peter's Complaint Referring to the Trial Court's Observation that No Party Wore a White Hat with Credibility Does Not Amount to an Assignment of Error.*

In the same vein, Peter complains about the court's statement in the statement of decision that "No party here can wear a white hat with credibility."  However, rather than address any legal or factual error with that finding, he goes on to state that after Eileen's dismissal, plaintiff had the burden of coming forward with evidence and the burden of proof.  This non sequitur notwithstanding, Peter has not presented us with a cogent challenge to the sufficiency of evidence to support the judgment.

We agree with the trial court's observation.  The evidence adduced at trial showed there were no "good guys" in this case.

o. *The Trial Court Properly Canceled the Schulze Note.*

Peter raises other related challenges to the trial court's findings, but without adequate legal support or a reference to the record that supports his position.  He repeats the complaint that plaintiff repudiated the verification of the first amended complaint, that the court improperly canceled the note and deed of trust, that the statement of decision included the wrong date for the commencement of trial, and that there were "omissions," "errors," and "ambiguities" in the statement of decision.  He complains about the trial court's statements in the statement of decision that the parties could not be trusted, that there were "few bits of believable testimony" and other matters of wording in the statement of decision, none of which amount to a proper assignment of error.

24

One of his criticisms relates to footnote two in the statement of decision, in which the trial court explained that plaintiff amended the first amended complaint to conform to proof, adding that plaintiff had apparently abandoned the other causes of action for injunctive relief, slander of title, conspiracy, breach of fiduciary duty, quiet title, and fraud. From this, Peter, without authority, argues that plaintiff thereby abandoned all causes of action, as if to suggest plaintiff had dismissed his action entirely. We need not dwell here because the amendment to the complaint added two causes of action on which the trial court rendered judgment.

Peter also takes issue with the court's statement that Adele was less culpable than Peter, but that she had a detailed understanding of Peter's activities and ratified them. The record on appeal includes the Exhibits, including Adele's correspondence with both plaintiff and his daughter, whereby she demanded payment of outstanding sums allegedly owed to Peter, and informed plaintiff's that in the foreclosure, the EDD would be "watching the sale." In addition, her in-court testimony regarding Peter's execution of the full reconveyance and she admitted she purposely withheld her signature. The record evidence fully supports the court's finding.

The balance of the brief parses various factual and legal findings but provides no citation of legal authority or legal argument supporting any assignment of error that would support a reversal. We have read the entire record and reviewed all the Exhibits and find the trial court's characterizations of the relative credibility of the parties to be on

point and accurate.  Further, the legal conclusions drawn by the court are supported by the record.

None of Peter's points warrant reversal or modification of the judgment.

2.      *Adele's Appeal*

Adele challenges various findings of fact and conclusions of law, which we will attempt to address to the extent they are accompanied by legal analysis.

a.      *Adele Fails to Sustain Her Burden of Showing Error in Findings of Law A and C:  The 2002 Recording of Peter's Reassignment of the Schulze Note and Deed of Trust to Himself and Adele as Joint Tenants Does Not Relieve Defendants of the Consequences of Peter's Previous Full Reconveyance to Plaintiff.*

Adele challenges as erroneous the trial court's finding of law that Peter reconveyed the property and the note, and that the reconveyance extinguished the underlying lien.  She asserts that the conclusions are contrary to law, that Peter and Adele held the note and deed of trust as joint tenants, she did not sign Exhibits 30 or 39, that the court erroneously relied on the principle that recording is necessary to put third parties on notice of a transaction, and that plaintiff and his daughter were on notice of Adele's interest in the note and deed of trust.  She also asserts plaintiff had constructive notice that she retained an interest in the lien that Peter had fully reconveyed.  We disagree.

Adele cites Civil Code sections 19, 1213, and 1214, under a heading entitled "Actual and Constructive Notice," in which she argues that plaintiff and his daughter had constructive notice of her interest in the note and deed of trust.  However, she fails to

26

provide us with any legal analysis or citation of authority demonstrating error in the trial court's findings of fact and conclusions of law. The Stolls omitted to record certain instruments at the time they were executed and later used the lack of record notice to reconvey the same interest multiple times, culminating in the last reassignment to the trustee who initiated the foreclosure, after having already fully reconveyed their interest to both plaintiff and Nutt in separate instruments. Their refusal to record instruments does not mean they retained any interest to convey.

On the issue of notice, Civil Code section 19 provides: "Every person who has actual notice of circumstances sufficient to put a prudent person upon inquiry as to a particular fact has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he or she might have learned that fact." Civil Code section 1213 provides that a recorded conveyance provides constructive notice to subsequent purchasers and mortgagees. Civil Code section 1214 provides that an unrecorded conveyance is void as to subsequent purchasers or mortgagees. Civil Code section 1215 defines conveyances.

Documents that are recorded provide constructive notice to *subsequent* purchasers and mortgagees, but plaintiff was not a subsequent purchaser or mortgagee, so the sections cited by Adele are inapposite. As between the parties to an unrecorded instrument, constructive notice is irrelevant, especially where the testimony of the parties shows that Adele had *actual* notice of the instrument by which Peter reconveyed the interest in the note and deed of trust acquired from Schulze. It is well settled that

27

recordation of a trust deed is not usually required for the validity of a trust deed, but merely affects its potential efficacy regarding subsequent bona fide purchasers for value. (*RNT Holdings, LLC v. United General Title Ins. Co.* (2014) 230 Cal.App.4th 1289, 1296, citing *Wells Fargo Bank v. PAL Investments, Inc.* (1979) 96 Cal.App.3d 431, 438; *Boye v. Boerner* (1940) 38 Cal.App.2d 567, 569–570; Civ. Code, § 1217.)

The main purpose of the recording laws is "'to protect those who honestly believe they are acquiring a good title, and who invest some substantial sum in reliance on that belief.'" (*RNT Holdings, LLC v. United General Title Ins. Co., supra*, 230 Cal App.4th at p. 1296, quoting *Beach v. Faust* (1935) 2 Cal.2d 290, 292–293.)

Here, Peter did not record the full reconveyance he had executed singly and delivered to plaintiff, but Adele testified she was fully aware of it and "purposely" did not sign it. At the same time, knowing what Peter had done, she did not object to the reconveyance or make any effort to set it aside. She was not a bona fide purchaser because she did not (1) purchase any interest in plaintiff's property or in the deed of trust in good faith for value, and (2) she had actual knowledge of the asserted rights of another, to wit, plaintiff. (*Melendrez v. D & I Investment, Inc*. (2005) 127 Cal.App.4th 1238, 1251 [explaining the definition of bona fide purchaser]; *Gates Rubber Co. v. Ulman* (1989) 214 Cal.App.3d 356, 364.)

Adele's letter to plaintiff, admitted into evidence, demonstrates she knew plaintiff had received the full reconveyance that Peter executed on his own, and that she knew the circumstances of the execution of that reconveyance. That document was effective as of

the time the reconveyance was delivered to plaintiff with Peter's signature, because, as pointed out above, Peter had authority to execute the reconveyance. Adele cannot rely on Peter's deceptive conduct to retain an interest in the note and deed of trust that had been previously fully reconveyed, where she was fully aware of the reconveyance that extinguished any rights held by either Peter or her.

As between the original parties to the note and deed of trust, there was actual notice, so recordation of the later fraudulent assignment of the note and deed of trust as part of the foreclosure attempt was void and irrelevant. Once Peter executed and delivered the reconveyance in favor of plaintiff, Adele and Peter had no further interest in plaintiff's residence to reassign to anyone else, much less to foreclose upon.

b. *Adele's Letters to Plaintiff and His Daughter Demonstrate She Had Knowledge of Peter's Deceptive Conduct, Approved of It, and Ratified it.*

Under separate headings, Adele takes issue with certain findings made by the trial court respecting her September 15, 2014 letter to plaintiff, followed by the trial court's finding of Law B, that Peter's reconveyance binds Adele, and that Exhibit 28 showed Adele knew of Peter's plan to reconvey the "property" and that she agreed to it. She takes issue with the trial court's reliance on the case of *Miller v. Johnston* (1969) 270 Cal.App.2d 289, 300, which the court cited for the proposition that, "When a managing spouse conveys community property, the non-managing spouse is bound by that conveyance if the non-managing spouse knows of the conveyance and agrees to it." Strangely, she does not assign as error the trial court's citation of a case that has been

superseded by statute (although, as we pointed out in addressing Peter's challenges, the same result is obtained under current law), choosing to relitigate the facts of the case without acknowledging the appropriate standard of review.

We have previously explained why Adele was bound by Peter's actions and will not repeat ourselves. To the extent Adele attempts to challenge the sufficiency of the evidence to support the judgment, she has ignored the well-worn appellate rules: "'"Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below. [Citation.] We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court." [Citation.]' [Citation.]" (*City of Glendale v. Marcus Cable Associates, LLC* (2014) 231 Cal.App.4th 1359, 1385.)

"'Under the substantial evidence standard of review we examine the entire record to determine whether there is substantial evidence supporting the factual determinations of the trial court [citation], viewing the evidence and resolving all evidentiary conflicts in favor of the prevailing party and indulging all reasonable inferences to uphold the judgment.'" (*Vasquez v. LBS Financial Credit Union* (2020) 52 Cal.App.5th 97, 109, quoting *612 South LLC v. Laconic Limited Partnership* (2010) 184 Cal.App.4th 1270,

1279.) "'"An appellate court does not reweigh the evidence or evaluate the credibility of witnesses, but rather defers to the trier of fact. [Citations.] 'The substantial evidence [standard of review] applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial.' [Citation.]" [Citation.]'" (*City of Glendale*, *supra*, 231 Cal.App.4th at p. 1385.)

Adele disagrees with the findings but has not met her burden of persuading us that there is insufficient evidence to support them. To the contrary, her argument completely ignores the overwhelming contrary evidence in the record.

c.      *Adele's Affirmative Defenses Failed.*

Referring to the trial court's conclusion that Peter's affirmative defenses failed, Adele notes that the trial court completely ignored her affirmative defenses. Ironically, she notes that the trial court did refer to conduct on her part that ratified Peter's inimical conduct, seemingly undermining her argument that the court did not consider her defenses. She also ignores the fact that her affirmative defenses were included in the same operative and joint answer to the first amended complaint. If the affirmative defenses failed as to Peter, they also failed as to Adele, who was well aware of Peter's actions and did nothing to distance herself from them.

The trial court unambiguously determined that Adele was aware of Peter's conduct and transactions and her letters to plaintiff and Nutt demonstrate she agreed with and ratified his acts, a finding of fact with which Adele takes issue. Aside from demonstrating a lack of understanding the legal concept of "ratification" in arguing that

31

nowhere did the word "ratify" appear, she has not raised a cognizable claim of legal error in the court's conclusion that she was bound by Peter's conduct. Her affirmative defenses were raised in an answer filed on behalf of both Peter and herself, so the merits, vel non, of Peter's affirmative defenses applied equally to Adele's affirmative defenses. We have already set forth our reasons for concluding that the court properly rejected Peter's affirmative defenses and why Adele is equally culpable in pursuing the wrongful foreclosure. The reasons for rejecting Peter's affirmative defenses, which are also Adele's, apply with equal force to Adele.

## DISPOSITION

The judgment is affirmed. Plaintiff is entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

FIELDS
J.

RAPHAEL
J.